# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DORROH, et al., | 1:11-cv-02120 AWI GSA |
| Plaintiffs, | **ORDER REGARDING CEDAR SOL WARREN'S MOTION TO BE SUBSTITUTED AS A PLAINTIFF IN THIS MATTER** |
| v. | |
| DEERBROOK INSURANCE COMPANY, a wholly-owned subsidiary of Allstate Insurance Company, | (Docket Entry No. 69) |
| Defendant. | |

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The complaint alleges that on March 13, 2000, Cedar Sol Warren was driving to work when he spilled his coffee, and became distracted. Warren swerved into oncoming traffic, striking the vehicle being driven by Plaintiff Robert Dorroh. As a result of the accident, Robert Dorroh was rendered a paraplegic.

At the time of the accident, Warren was covered under an insurance policy purchased by his father, James Warren, and issued by Defendant Deerbrook Insurance Company.

Because Robert Dorroh was on his way to work at the time of the accident, he made a claim for workers' compensation benefits. That claim was denied by his employer and its

1

insurer, Superior National Insurance Co.  No benefits were paid by the workers' compensation insurance carrier until after a trial was held before the California Worker's Compensation Appeals Board ("WCAB").  On June 13, 2003, the WCAB issued an award finding Robert Dorroh was entitled to benefits.  Thereafter, Superior National began paying benefits to, and on behalf of, Robert Dorroh for the injuries he suffered.  Prior to that date, Superior National had not furnished medical treatment, nor paid benefits on behalf of the claim.

Also as a result of the accident, Robert and Barbara Dorroh made a claim against Warren's insurer, Deerbrook.  They sought payment of the $15,000 policy limit in exchange for a release of all claims against Deerbrook's insured, Warren.  At the time of the demand, Deerbrook was aware that its insured - Cedar Sol Warren - was entirely at fault for the accident, and that Robert Dorroh had suffered in excess of $300,000 in medical bills.

In September 2000, before the settlement between the Dorrohs and Warren could be finalized however, Deerbrook received notice from Superior National advising it of a lien in an "unknown amount."  In actuality, Superior National had not paid *any* money as a result of a dispute as to the compensability of the workers' compensation claim.  Faced with the lien notice, Deerbrook advised Dorrohs' counsel (the Carcione firm) of the lien.  Mr. Carcione refused to accept a joint payee settlement check (naming the Dorrohs & Superior National) and demanded that Deerbrook make the check payable to the Dorrohs only.  Attorney Carcione contended that Deerbrook could ignore the lien notice because the workers' compensation carrier had "denied" the claim and no monies had been paid.

On January 31, 2001, Mr. Carcione made his final demand that Deerbrook ignore the lien notice and settle the Dorrohs' claim for the policy limits.  Deerbrook chose not to disregard the lien notice, and refused to make the settlement check payable to the Dorrohs only.  Accordingly, Mr. Carcione refused to settle the matter.

After the parties were unable to settle, the Dorrohs filed suit against Warren in Tuolumne County Superior Court.  In August 2006, the Dorrohs' counsel proposed that Warren assign his

claim to the Dorrohs, and that Warren and Deerbrook stipulate to a judgment against Warren. The Dorrohs proposed they would agree not to execute the judgment against Warren, and instead would file a bad faith case only against Deerbrook, thus avoiding the need for a trial between the Dorrohs and Warren, and limiting Warren's liability. Deerbrook rejected this offer. Prior to the trial, Warren alleges that Deerbrook's attorney recommended that he file for bankruptcy. He did so. Close in time, a $16 million judgment was entered against Warren in the Tuolumne County Superior Court action. The Dorrohs are now pursuing a bad faith claim against Deerbrook as Warren's assignees. In that regard, the Dorrohs contend that Deerbrook acted in bad faith by (1) refusing to ignore the workers' compensation lien, (2) by refusing to issue a settlement draft in the Dorrohs' name only, and (3) by refusing to stipulate to their proposed judgment. The Dorrohs contend that Deerbrook's refusals have resulted in Warren's bankruptcy.

On July 30, 2012, Cedar Sol Warren filed his Notice of Motion and Motion to be Substituted as a Plaintiff in this Matter. He set the matter to be heard before District Judge Anthony W. Ishii on August 27, 2012. (Doc. 69.) By minute order dated July 31, 2012, the motion was re-set to be heard before the undersigned on September 7, 2012, at 9:30 a.m. in Courtroom 10. (Docs. 70 & 71.)

On August 24, 2012, Defendant Deerbrook Insurance Company filed its opposition to Warren's motion, accompanied by its request for judicial notice. (Doc. 74.) On August 31, 2012, Warren filed his reply to the opposition. (Doc. 77; *see also* 79 [errata re exhibits].) On September 4, 2012, Deerbrook filed a supplemental opposition. (Doc. 78.)

On September 6, 2012, pursuant to Local Rule 230(g), this Court vacated the hearing date on the motion and took the matter under submission for written findings. (Doc. 80.)

//
//
//

## DISCUSSION

*Preliminary Matters*

As indicated above, Warren filed a reply to Defendant's opposition (Doc. 77) and Deerbrook then filed a supplemental opposition (Doc. 78). The Court has not considered either of these pleadings.

First, Warren's reply contains arguments not raised in the original motion. To the degree Warren's reply to Deerbrook's opposition is an attempt to correct deficiencies identified in the original motion and to raise new arguments, those arguments are not considered. *See Eid v. Alaska Airlines, Inc.*, 621 F.3d 858 (9th Cir. 2010) (new arguments raised in a reply brief will not be considered).

Second, while Deerbrook has entitled its pleading a "Supplemental Opposition," it is in fact a sur-reply. However, this Court's Local Rules do not provide for such a filing, nor did Deerbrook seek prior authorization to file a sur-reply. Local Rule 230, subdivisions (b) through (d), contemplates a motion, an opposition, and a reply only. Accordingly, this pleading will be stricken.

*The Applicability of Rule 25*

Rule 25 of the Federal Rules of Civil Procedure concerns the substitution of parties. The only section potentially relevant here, is subdivision (c):

> **Transfer of Interest**.  If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

On April 19, 2011, David F. Wurst, Trustee of the Bankruptcy Estate of Cedar Sol Warren, filed a complaint for bad faith in the Eugene Division of the United States District Court, District of Oregon, naming Deerbrook as the sole defendant. (Doc. 1.)

On September 7, 2011, a Notice and Request for Approval of Substitution of Party was filed with the Oregon court. Specifically, pursuant to an Irrevocable Assignment by Trustee

Wurst in the Warren bankruptcy proceeding, Robert and Barbara Dorroh (not yet parties to this action) received an irrevocable assignment of:

> *[A]ll of the bankruptcy estate's claims* that it may have, or hereinafter may acquire, against Deerbrook Insurance Company ("Deerbrook") based on Deerbrook's alleged failure to comply with the implied covenant of good faith and fair dealing, including but not limited to those with respect to settling claims by the Dorrohs against the debtor . . . within the available policy limits, and provision of the Debtor's defense in the matter, *Dorroh v. Warren*, Superior Court, County of Tuolumne, Case No. CV 48013 (The "Claims").
>
> *The assignment is absolute* and not for purposes of security. David F. Wurst, Trustee makes no warranty concerning The Claims, express or implied.

(Doc. 24, emphasis added.)[1] Thereafter, the Dorrohs were substituted in as Plaintiffs for trustee Wurst. (Doc. 26.) Thereafter, the Dorrohs filed a motion to transfer venue for convenience and the matter was then transferred to this Court. (Docs. 27-29, 36.)

Significantly, the above assignment is a complete assignment.[2] An insured must reserve personal claims at the time the right to recover is assigned to a thirty-party, otherwise, the insured's personal claims are lost due to the prohibition against splitting causes of action. *Purcell v. Colonial Ins. Co.*, 20 Cal.App.3d 807, 97 Cal.Rptr. 874 (1971). Thus, if Warren intended to maintain what he refers to as "personal claims (i.e. those sounding in tort law for emotional distress and punitive damages)" he should have done so at the time of the assignment from the estate to the Dorrohs.

In *Cain v. State Farm Mutual Automobile Ins. Co.*, 47 Cal.App.3d 783 (1975), the plaintiff was involved in an automobile accident that resulted in the death of two individuals.

---

[1] Relatedly, the Notice of Intent to Sell Property at Private Sale form includes the following additional language: "This includes the transfer of any rights held by the trustee and/or the [] Estate in the matter David F. Wurst, Trustee of the Bankruptcy Estate of Cedar Sol Warren, Plaintiff vs. Deerbrook Insurance Company, a wholly-owned subsidiary of Allstate Insurance Company, U.S. District Court, District of Oregon, Eugene Division, Case 6:11-cv-006136-TC ('Wurst v. Deerbrook')." (Doc. 24 at 8.)

[2] "[R]egardless of whether a personal injury claim is transferable or assignable under state law, such claims become part of the bankruptcy estate under section 541" of Title 11 of the United State Code. *Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705, 709 (9th Cir. 1986.)

5

When State Farm refused to settle with the next of kin of the deceased persons, plaintiff - the insured - entered into an assignment agreement with the next of kin. *Id*. at 810. In determining whether plaintiff was a real party in interest, the court stated that the question "turns upon whether plaintiff was at the time of the assignment possessed of a single cause of action or two causes of action, one for personal tort and one for breach of contract." *Id.* at 811. Reading California Supreme Court authority together, the appellate court concluded that a single cause of action for a wrongful failure to settle within policy limits "give[s] rise to two forms of damages: (1) Compensation for pecuniary loss, and (2) general damages for mental distress." *Id*. at 812. The court went on to conclude that the plaintiff

> was possessed of a single and indivisible cause of action against [State Farm]. He assigned that cause of action to the [decedents' next of kin] in clear and unequivocal language. In so doing the plaintiff simply waived any claim for purely personal damages . . ..

*Id*. at 814.

In *Cain*, plaintiff and the insured executed an assignment wherein the plaintiff transferred the insured's cause of action regarding State Farm's failure to settle within policy limits, yet the insured reserved to himself any cause of action for physical injuries sustained as a result of that failure. The plaintiff and insured then jointly brought suit against State Farm. *Cain v. State Farm Mutual Automobile Ins. Co.*, 47 Cal.App.3d at 790.

Here then, when the trustee of Warren's bankruptcy estate assigned all claims to the Dorrohs, including a single cause of action for a failure to settle within policy limits, Warren waived any claims for purely personal damages. Unlike the plaintiff in *Cain*, Warren did not enter into an assignment that "explicitly reserved to [him] any cause of action which he might have against [Deerbrook] for physical injuries sustained to him as a result of its failure to settle within policy limits." *Cain*, at 796. Rather, his assignment, via the trustee, was a blanket assignment to the Dorrohs of all causes of action against Deerbrook. *See also Archdale v. American Inter. Specialty Lines Ins. Co.*, 154 Cal.App.4th 449, 456 n.3, 64 Cal.Rptr.3d 632

(2007) (Insured retained his tort claim for emotional distress and punitive damages when assigning his rights to the injured parties in a bad faith action against the insurer).

Warren's reliance upon *Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937 (1976) is misplaced. *Murphy* is clearly distinguishable from this matter as it did not involve any assignment of the plaintiff's cause of action for breach of the covenant of good faith and fair dealing. Instead, Murphy was the injured party seeking to hold the insurer directly liable for its purported bad faith in refusing to settle her claim within its insured's policy limits. *Murphy*, at 940. The court concluded that because "the duty to settle is intended to benefit the insured and not the injured claimant, [the] third party beneficiary doctrine does not furnish a basis for the latter to recover." *Id.* at 944. In other words, Murphy - the injured party - filed suit against Allstate without involving Allstate's insured, Pollard. Because Allstate's insured is the party to whom Allstate would be liable had it acted with bad faith in refusing to settle a claim, only the insured - rather than the injured party - could hold the insurer liable absent an assignment from the insured to the injured party. Here, Warren, by and through Wurst the trustee, assigned his cause of action for a breach of the covenant of good faith and fair dealing to the Dorrohs. The interest assigned was his as an insured party. The fact the Dorrohs are the injured parties in this case is inconsequential because the assigned interest, which is the controlling factor, is that of the insured. Warren is the insured party (like Pollard in *Murphy*, Allstate's insured). Therefore, Warren's reliance upon the holding in Murphy is not persuasive as it does not support his argument.

Finally, Warren argues that the personal claims of emotional distress and punitive damages as against Deerbrook were abandoned to him at the conclusion of the bankruptcy proceeding. However, there simply was nothing remaining in the estate with regard to any claims involving Deerbrook and its alleged failure to settle the claims of its insured. Because the assignment from the trustee to the Dorrohs was a complete assignment, and because Warren did not reserve any personal cause of action for himself at the time of that assignment, nothing was abandoned to the debtor - Warren - at the conclusion of the bankruptcy proceeding.

7

# CONCLUSION

For the foregoing reasons, Cedar Sol Warren's motion to substitute as a plaintiff in this matter is DENIED.  The Clerk of the Court shall strike docket entry number 78.


IT IS SO ORDERED.

**Dated:**   **September 21, 2012**         /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE