# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DORROH, et al., ) | 1:11-cv-2120 AWI GSA |
| Plaintiffs, ) | |
| v. ) | **ORDER REGARDING DISCOVERY DISPUTES** |
| DEERBROOK INSURANCE COMPANY, a ) wholly-owned subsidiary of Allstate ) Insurance Company, ) | (Docs. 64, 66, 67, and 75) |
| Defendant. ) | |

## INTRODUCTION

This case involves claims of bad faith brought by Plaintiffs, Robert Dorroh and Barbara Dorroh ("Plaintiffs") against Defendant, Deerbrook Insurance Company ("Deerbrook" or "Defendant"). The parties in this case have a contentious history. On May 4, 2102, this Court conducted an informal telephonic conference call regarding a Motion for Protective Order filed by Defendant. (Doc. 59). The Court helped the parties resolve this dispute, however, the conflicts have continued as evidenced by the number of discovery motions pending before this

1

Court. On July 17, 2012, Plaintiffs filed a Motion to Compel.[1] (Doc. 64). On July 19, 2012, Defendant filed a Motion to Compel.[2] (Doc. 66). Subsequently, on July 20, 2012, Plaintiffs filed a Motion for Protective Order to limit the testimony of Mr. Stucky, Esq. during his deposition.[3] The parties filed a Joint Statement Regarding Discovery Disputes ("Joint Statement") on August 27, 2012. (Doc. 75). Both parties have requested monetary sanctions. A hearing regarding all of the above motions was set for September 7, 2012. (Doc. 68). After reviewing the Joint Statement, this Court vacated the hearing date and took the matter under submission for written findings. (Doc. 80). The Court issues the following order as set forth below.

## RELEVANT BACKGROUND

The complaint alleges that on March 13, 2000, Cedar Warren was driving to work when he became distracted. To avoid a collision, Mr. Warren swerved into oncoming traffic, and struck the vehicle driven by Mr. Dorroh. As a result of the accident, Mr. Dorroh was gravely injured and rendered a paraplegic. At the time of the accident, Cedar Warren was insured under an insurance policy issued by Deerbrook.[4]

Because he was on his way to work at the time of the accident, Mr. Dorroh filed a claim against his employer's workers compensation insurance carrier, Superior National Insurance Company ("Superior"). Mr. Dorroh also made a claim against Deerbrook for $15,000.00 which

---

[1] Plaintiffs' Notice of Motion to Compel seeks to compel the following: 1) responses to Special Interrogatories Nos. 3-10; 2) an order deeming Plaintiffs' requests for admissions Nos. 1 and 3 admitted; 3) an order requiring a designee on behalf of Defendant for a further deposition on items 1 through 16 and 25 through 37 of Plaintiffs' First Entity Deposition Notice to Deerbrook; and 4) sanctions for reasonable costs and attorney's fees. The Joint Statement only references some of Plaintiffs' requests outlined above. The Court presumes that the other items not contained in the Joint Statement were resolved by the parties prior to filing the pleading. As such, the Court will only rule on those disputes specifically addressed in the Joint Statement.

[2] Deerbrook's Motion to Compel seeks an order: 1) to compel the testimony of Joseph Carcione Jr. to provide further responses to questions that were asked at his June 28, 2012 deposition; 2) to compel a second session of Mr. Carcione's deposition; 3) to appoint a discovery referee to preside over the deposition; and 4) to sanction Mr. Carcione and Plaintiffs' counsel for reasonable costs and attorney's fees for bringing the motion.

[3] In addition to the above motions, a Motion to be Substituted as a Party was filed by Cedar Sol Warren on July 30, 2012 which will be addressed in a separate order. (Doc. 69).

[4] Cedar Warren was an insured under his father, James Warren's policy.

was the policy limit in exchange for a release of all claims against Mr. Warren.  At the time of the demand, Deerbrook was aware that Mr. Warren was 100% at fault for the accident, and that Mr. Dorroh had suffered in excess of $300,000.00 in medical bills. (Doc. 75, at Ex. 4 and 5).

During settlement negotiations between the Dorrohs and Deerbrook, the parties agreed to a settlement of the $15,000.00 policy limit.  However, before the settlement had been finalized, Deerbrook received a "notice of lien" from Superior, advising Deerbrook of an unknown lien amount.  (Doc. 75, Ex. A).  Based on the notice of lien, Deerbrook advised Mr. Carcione, Mr. Dorroh's attorney, that it was required under California law to list Superior as a co-payee on any settlement payment made to the Dorrohs.  (Doc. 75, at Ex. 7 and 24).  In fact, Deerbrook explained that it had concerns that if they ignored the lien notice, it could expose Mr. Warren to personal liability from the lienholder and possibly subject Deerbrook to tort liability for interfering with the lien.

Mr. Carcione refused to accept a joint payee settlement check and demanded that Deerbrook make the check payable to the Dorrohs only.  Attorney Carcione contended that Deerbrook could ignore the lien notice because the workers' compensation carrier had denied the claim and no monies were paid. (Doc. 75, at Ex. 8 and 9).  Deerbrook asked for written proof that the claim was denied, but Mr. Carcione did not timely provide a denial letter.[5]  Mr. Carcione however, did offer to indemnify Warren and hold him harmless "from third parties who may claim against [Warren] for additional monies over and above the $15,000.00." (Doc. 75 at Ex. 9, pg. 1).

After it was clear the parties were at an impasse, the Dorrohs filed suit against Cedar Warren in Tuolumne Superior Court.  In August 2006, prior to starting a bench trial, the Dorrohs' counsel proposed that Warren assign his claim to the Dorrohs, and that Warren and Deerbrook

---

[5] In fact, Mr. Dorroh's workers' compensation claim had been denied, however, he had also filed an appeal with the Workers' Compensation Appeals Board ("WCAB").  On July 14, 2001, the WCAB ruled that Mr. Dorroh was injured in the course of his employment. (Doc. at 75, at Exhibit 3).  Mr. Dorroh subsequently collected several hundred thousand dollars in workers' compensation benefits.  The Dorrohs eventually presented the denial letter to Deerbrook, but this allegedly did not occur until several years after the WCAB had ruled. (Doc. 75 at Ex. 22).

3

stipulate to a judgment against Warren. The Dorrohs proposed they would agree not to execute the judgment against Warren, and instead would file a bad faith case only against Deerbrook, thus avoiding the need for a trial between the Dorrohs and Warren, and limiting Warren's liability. (Doc. 75 at Ex. 10). However, Deerbrook, rejected this offer. Mr. Warren then filed for bankruptcy in the United States Bankruptcy Court, District of Oregon, prior to the entering of the verdict. The case went to trial, and on April 1, 2008, a $16 million judgment was entered against Warren. (Doc. 75, at Ex. 1, 14 and 15). Warren and Deerbrook appealed the state court judgment which was ultimately upheld on appeal and is now final. (Doc. 75, Ex. 15).

Meanwhile, Warren scheduled a "bad faith claim" against Deerbrook for its failure to issue a settlement check without listing Superior as a co-payee as an asset of his bankruptcy estate. In May 2009, subject to bankruptcy court approval, the Bankruptcy Trustee reached an agreement with Deerbrook for the settlement of the bad faith claim in the amount of $125,000.00. (Doc. 75, at Ex. 17, pg. 4). The Dorrohs objected to this agreement. The Bankruptcy Court held a bench trial. (Doc. 75, at Ex 17, pg. 8). After the two parties submitted bids, the Bankruptcy Court issued a decision and held *inter alia*, that Deerbrook's final bid was superior to the Dorrohs final bid and that the bad faith claim had little or no merit. The Dorrohs timely appealed the decision to the Ninth Circuit.

On March 15, 2011, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") held that the Bankruptcy Court had abused its discretion when it approved the settlement with Deerbrook. Specifically, the BAP held that the court had erred in accepting Deerbrook's setttlement because *inter alia*, there was no finding that the bad faith case was frivolous, the court had failed to determine which of the two bids submitted were of greater value to the estate, and the proposed distribution to creditors violated certain provisions of the Bankruptcy Code. (Doc. 75, Ex 17 at pgs. 16-17). The case was remanded for further proceedings to remedy these deficiencies. (Doc. 75, Ex 17 at pg. 19-20).

Subsequently, on April 19, 2011, David F. Wurst, Trustee of the Bankruptcy Estate of

Cedar Sol Warren, filed a complaint for bad faith in the Eugene Division of the United States District Court, District of Oregon, naming Deerbrook as the sole defendant. (Doc. 1). On September 7, 2011, a Notice and Request for Approval of Substitution of Party was filed with the Oregon court. Thereafter, the Dorrohs were substituted in as Plaintiffs for Trustee Wurst (Doc. 26). The matter was then transferred to this Court, following a motion by the Dorrohs (Docs. 27-29). (Doc. 36.)

The Dorrohs are now pursuing the bad faith claim against Deerbrook as Warren's assignee. For the purposes of the discovery issues, the Dorrohs contend that Deerbrook acted in bad faith by: (1) refusing to ignore the workers' compensation lien; (2) failing to issue a settlement draft in Dorrohs name only; and (3) by not accepting Dorrohs proposed judgment prior to the entry of judgment during the state court proceeding. The Dorrohs also allege that Deerbrook inappropriately advised Mr. Warren to file for bankruptcy and offered to pay his bankruptcy fees, and improperly manipulated the Bankruptcy Trustee by convincing him to sell the estate's bad faith claim to Deerbrook for $125,000.00. In contrast, Deerbrook contends that the Dorrohs' bad faith claim is meritless as evidenced by California law and the Bankruptcy Court's finding that the case lacked merit. Moreover, Deerbrook argues that the discovery should be limited to the events related to the notice of lien only, and the Dorroh's discovery requests are too broad as the issues in the bankruptcy and subsequent settlement negotiations are not relevant.

## DISCUSSION

As a preliminary matter, the Court notes that much of the parties' positions related to the discovery disputes in this matter have been premised on arguments about whether Deerbrook acted in bad faith when it refused to issue the $15,000.00 settlement check to the Dorrohs without listing Superior as a co-payee. The parties have each argued their respective interpretations of California statutes and case law on this issue including citing *inter alia*, *Coe v. State Farm*, 66 Cal. App. 3d 981, 994 (1977), *Mercado v. Allstate Ins. Co.*, 340 F. 3d 824 (9th

Cir. 2003) and California Labor Code section 3859.  However, while this legal discussion is informative for purposes of establishing a context of the issues, it has done little to aid the Court in resolving the *discovery* disputes presented; the Court would be constrained to limit the discovery of either side absent a ruling from the district court judge on this issue.  Moreover, it is apparent that much of this dispute is the result of the attorneys' inability to effectively meet and confer which is a requirement of Fed. R. Civ. P. 26.  This is evidenced by the fact that the first twenty pages of the parties' fifty page joint statement consist largely of engaging in unprofessional bantering amongst themselves.  The parties are reminded that discovery is broad in scope and is defined in Fed. R. Civ. P. 26(b) which in pertinent part states as follows:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Given the broad scope of discovery, the Court will address each of the issues raised in the Joint Statement.

### *Post-February 2001 Discovery*

The Dorrohs have argued that they are entitled to discovery for events that occurred post-February 2001 (after the initial settlement discussions between the Dorrohs and Deerbrook) because Deerbrook's subsequent actions are further evidence of its bad faith.  These actions include its refusal to stipulate to the Dorrohs' settlement offer at trial, its alleged influence over Mr. Warren to file bankruptcy, and its alleged inappropriate contact with the Bankruptcy Trustee during the bankruptcy proceedings.  The Dorrohs also argue that Deerbrook's motion for summary judgment raises several defenses based on the bankruptcy proceedings which makes those proceedings relevant.  Finally, this information is relevant to the economic, emotional, and punitive damages that both Mr. Warren and the Dorrohs are entitled to.

In opposition, Deerbrook argues that post-February 2001 events are only relevant to the

6

emotional and punitive damages of the bad faith claim and that as an assignee, the Dorrohs are not entitled to that relief. Furthermore, only Warren can raise claims related to the bankruptcy proceeding. With regard to the rejection of the settlement agreement, Deerbrook contends that as a matter of law it was within its rights to reject the settlement offered by the Dorrohs during the state trial. Finally, it notes that there is no motion for summary judgment pending and that any reference to the bankruptcy proceedings in the motion for summary judgment was done for context purposes only.[6]

Preliminarily, in a separate order this Court has determined that Mr. Warren cannot be substituted in as a party and he will not be able to pursue additional claims in this lawsuit. Notwithstanding this finding, at this juncture of the proceedings, this Court is unable to make dispositive determinations regarding which aspects of the bankruptcy proceeding claims (i.e. economic or otherwise) belong to the Dorrohs versus Mr. Warren. Those dispositive issues need to be resolved by the District Court Judge. Moreover, no dispositive ruling has been made regarding whether Deerbrook had a right to reject the settlement offer during the state court proceedings. Therefore, post-February 2001 events remain relevant for discovery purposes. Whether the Dorrohs have cognizable claims, and whether any of this related evidence will be admissible at trial are determinations to be made by Judge Ishii once the dispositive motions have been filed and ruled upon. As such, the Court will permit discovery on post-February 2001 issues at this point in the proceedings.

### Ms. Harcharik's Deposition

Plaintiffs argue that Defendant's designee, Ms. Harcharik, was insufficiently prepared for the deposition as they clearly wanted to ask questions about Deerbrook's claims manual. In

---

[6] The Court acknowledges that Deerbrook has withdrawn its motion for summary judgment and Plaintiffs' relevancy argument on that basis is without merit. There is nothing in the record as it currently exists to indicate that Deerbrook intends to make this argument in the future. However, Deerbrook is cautioned the Court has reviewed the motion and notes that it is unpersuaded by Deerbrook's representations that references to the bankruptcy proceedings were used only for purposes of context. Deerbrook relies on the findings of the Bankruptcy Court in the motion for summary judgment as a defense and in support of its motion which would make the bankruptcy proceedings relevant under Rule 26. *Compare* Doc. 75 at pg. 23 and Doc. 54-1 pg. 25.

7

1 particular, the witness did not have information related to how and why some of the policies end
2 up in the manual, how the manual is assembled, and how and when revisions are made.

3       Deerbrook contends that Ms. Harcharik was adequately prepared given the vague and
4 over broad description contained on the examination notice.  Defendants argue that since they
5 complied with the deposition notice, Plaintiffs should request the remaining information in a
6 written interrogatory.

7       In response, Plaintiffs' counsel has indicated that he does not believe an interrogatory
8 would be an effective way to obtain the information. He would be willing to provide a more
9 detailed deposition notice clearly identifying what information about the claim manual he is
10 seeking

11       Federal Rule of Civil Procedure 30(b)(6) provides that notice of a subpoena directed to an
12 organization must describe with reasonable particularity the matters for examination. Fed. R.
13 Civ. P. 26(b)(6).   A review of the notice reveals it could have been more specific.  On the other
14 hand, Ms. Harcharik's deposition testimony reveals that she possessed limited information to
15 answer questions regarding the claims manual.  In fact, she had not referred to the manual in
16 several years.  As such, the Court will permit further deposition of another designee on the
17 condition that Plaintiffs' deposition notice clearly identifies the information sought.  The Court
18 will not dictate to Plaintiffs' counsel which discovery devices are most appropriate.  Counsel are
19 cautioned that they shall work together to ensure the requested information is exchanged.  Both
20 sides need to be realistic about which discovery devices are the best methods for obtaining this
21 information.  This issue clearly could have been resolved through a meaningful meet and confer.

22       ***Written Responses to Plaintiffs' Written Discovery***

23       Plaintiffs contend that Deerbrook failed to answer Plaintiffs' Special Interrogatories Nos.
24 3 and 4 that relate to information concerning whether Defendant offered to pay Mr. Warren's
25 bankruptcy fees. (Doc. 75, Ex. 21).  Although there were several objections raised in the initial
26 response to the interrogatories, the only basis for the objection in the Joint Statement relates to
27
28

the time limitation and the fact that the Dorrohs cannot recover emotional distress damages.[7] These issues have already been addressed previously in this order. As such, Defendant must answer these interrogatories.

Plaintiffs also argue that Defendant failed to adequately answer Special Interrogatories Nos. 8-9 which relate to the steps that Deerbrook took to verify the lien that Superior National had against Robert Dorroh as of February 21, 2001. (Doc. 75, Ex 21). Plaintiffs argue that Deerbrook did not answer the questions and only gave information related to what attempts it made to obtain a "denial letter," which was not the question posed. In response, Deerbrook argues that based on California law, it was required to honor the lien whether or not Superior National paid any money to the Dorrohs and that it fully answered the question.

Functions of interrogatories include obtaining evidence, information which may lead to evidence and admissions, and to narrow issues to be tried. *United States v. West Virginia Pulp and Paper Co.*, 36 F.R.D. 250, 252 (S.D.N.Y. 1964) (citing *United States v. Watchmakers of Switzerland Information Center, Inc.*, 2 F.R.Serv.2d 33.353, Case 3 (S.D.N.Y. 1959)). The party answering interrogatories must furnish "the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Fed. R. Civ. P. 33(b)(3) requires that each interrogatory, unless objected to, must be answered separately and fully in writing, under oath. Fed. R. Civ. P. 33(b)(3). An "evasive or incomplete . . . answer, or response is to be treated as a failure to . . . answer, or respond." Fed. R. Civ. P. 37(a)(4).

"Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996). If a responding party is unable to supply requested information, "the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and 'set forth the efforts he used to obtain the information.'" *Hansel*, 169 F.R.D. at 305 (quoting *Milner v. National School of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977)). Fed. R. Civ. P. 33 "is to

---

[7] Since the other objections were not raised in the Joint Statement, they have been waived.

9

be given a broad and liberal interpretation in the interest of according to the parties the fullest knowledge of the facts and of clarifying and narrowing the issues." *West Virginia Pulp*, 36 F.R.D. at 252.

The Court has reviewed Deerbrook's response to Interrogatories 8 and 9 and disagrees with Defendant that it answered the questions. Although it is Deerbrook's position that the question is not relevant based on California law, Judge Ishii has not made that determination. Therefore, the questions posed by Plaintiffs are relevant and Deerbook must provide answers. As noted by Plaintiffs, if Deerbrook did nothing other than request a copy of the denial letter then it should state so.

*Attorneys' Depositions*

The remaining disputes involve the extent of questions of two attorneys: 1) Mr. Roger Stucky, a partner at Carcione, Cattermole, Dolinski, et al., ("the Carcione law firm") the attorneys of record for Plaintiffs Robert and Barbara Dorroh[8] and 2) Mr. Carcione, Esq., who handled the initial settlement negotiations between the Dorrohs and Deerbrook. Plaintiff is seeking to limit the questions that Mr. Stucky can be asked in an anticipated deposition. Deerbrook has filed a motion to compel additional testimony from Mr. Carcione in a second deposition.

*Mr. Stucky*

Plaintiffs have agreed that Mr. Stucky may be deposed but argue the questions should be limited to those matters where he is a factual witness only, including his conversations with Deerbrook's claim adjuster, Jason Kenady, and possibly to non-privileged matters that occurred during Mr. Dorroh's workers' compensation case.

Defendant agrees that it should be permitted to question Mr. Stucky on the issues outlined above, but that it should also be permitted to obtain information about why Mr. Stucky promised to provide Deerbrook the denial letter, but failed to do so until September 2009. Additionally,

---

[8] Mr. Stucky is still handling Mr. Dorroh's ongoing worker's compensation matter.

Deerbrook argues it is entitled to ask questions about why the Dorrohs contend the compensation claim was denied when Mr. Dorroh received $485,000.00 in workers' compensation benefits. In support of its position, Deerbrook argues that the advice of several legal treatises indicate that members of the Carcione law firm should not be representing the Dorrohs in this bad faith action given that it represented the Dorrohs during the underlying settlement negotiations. It also cites *Fireman's Fund Insurance Company v. Superior Court (Hicks)*, 72 Cal. App. 3d 786 (1977) for the proposition that when an attorney is the sole negotiator in a bad faith action alleging punitive damages, then the attorney can be deposed and facts fall outside of the attorney-client privilege, and outside of the work product rule.

Plaintiffs respond that the attorneys at the firm understand the implications and limitations of their legal representation and will hire additional attorneys to try the case if necessary. Moreover, the Dorrohs argue that the reason Mr. Stucky did not provide the denial letter is irrelevant as this would not have changed the outcome of this case. Finally, the answers to Deerbrook's questions involving Mr. Stucky's legal contentions can be obtained via contention interrogatory rather than deposition.

As a preliminary matter, absent a motion to disqualify counsel, this Court will not offer an opinion about whether the Carcione law firm should be representing the Dorrohs in this matter. It is not the role of this Court to advise attorneys whether or not to take advice offered in any legal treatises. As such, Defendant's argument in this regard is unpersuasive.[9]

Moreover, Fed. R. Civ. P. 30(a) provides that depositions may be taken of "any person." Fed. R. Civ. P. 30(a). Therefore, there is no express prohibition against the taking of attorney depositions. However, courts have long recognized the burdens imposed on the adversary process when lawyers themselves are the subject of discovery requests and have resisted the notion that lawyers should be routinely subjected to broad discovery. *Shelton v. American*

---

[9] Defendant itself acknowledges that it is the Dorrohs' attorneys prerogative to ignore this advice. (Doc. 75 at pg. 38).

*Motors Corp.*, 805 F. 2d 1323, 1327 (8th Cir. 1986). The Eighth Circuit has held that opposing counsel should only be deposed after a showing that: (1) no other means exist to obtain the information sought; 2) the information sought is relevant and nonprivileged; and 3) the information is crucial to the preparation of this case. S*helton v. American Motors Corp.*, 805 F. 2d at 1328. The Sixth Circuit has adopted the *Shelton* rule and the Dorrohs have argued that *Shelton* is the leading case in this area. *See, Nationwide Mutual Ins. Co. v. Home Ins. Co.*, 278 F. 3d 621, 628 (6th Cir. 2002) (adopting *Shelton*). However, the Court notes that the Second Circuit has adopted less stringent criteria. In *In re Subpoena Issued to Dennis Friedman*, 350 F. 3d 65, 72 (2d Cir. 2003), the court held that Rule 26 requires a flexible approach to attorney depositions that takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought in relation to the pending litigation, the risk of encountering privilege and work product issues, and the extent of discovery already conducted. The Court noted that these factors are appropriately considered in determining whether interrogatories should be used in lieu of a deposition. *Id*. The Ninth Circuit has not ruled on this issue.

This case presents an unusual circumstance because Mr. Stucky is not only a fact witness in this case, but his actions were also implicated in the underlying settlement negotiations. Deerbrook cites *Merritt v. Superior Court (Reserve Ins. Co.),* 9 Cal. App. 3d 721 (1970) for the proposition that in a third party bad faith case, an attorney may be deposed who represented the insured in that action on relevant non-privileged matters such as settlement demands or offers received, and non-privileged communications with the insurer's claims representatives or attorneys. The holding is not as broad as Deerbrook alleges however. In *Merritt*, the Court was examining a specific interrogatory and held that when determining what discovery devices can be used when getting information from an attorney, is important to examine the manner in which the case is prosecuted. *Merritt v. Superior Court,* 9 Cal. App. 3d at 730. Specifically, in *Merritt*, the

Court found that discovery of information held by plaintiff's former counsel would be permitted because the plaintiff was relying heavily on evidence that his prior attorney could only have learned in the course of his employment. *Id*. In doing so, the Court concluded that Plaintiff had initiated a lawsuit in which he placed the attorney's decisions, conclusions, and mental state of at issue. *Id*.

Here, the Dorrohs agree that Mr. Stucky can be deposed but seek to limit the questions to those of a fact witness. However, Deerbrook is seeking information as to why Mr. Stucky did not send the denial letter, as it will argue negligence by the Carcione law firm as a defense in this action. As such, the Court will permit the deposition testimony of Mr. Stucky on that issue. The Court also finds that Deerbrook may inquire into the reasons why Mr. Stucky continues to assert the workers' compensation claim was denied even though Mr. Dorroh received a monetary award as this is relevant for discovery purposes.[10] The Court will not make a broad ruling as to the other issues that may arise in the course of the deposition. Privilege objections must be asserted to particular questions and evaluated. Blanket privilege objections are not permitted. If counsel believes that a question is improper, he should state a specific objection to the question and the Court will rule on the issue at a later time if needed.

*Mr. Carcione*

Deerbrook has brought a motion to compel a second deposition of Mr. Carcione, a percipient witness in this case. Deerbrook contends that during his deposition, Mr. Carcione obstructed the questioning by providing non-responsive argumentative testimony, abused and insulted opposing counsel, and pretended not to understand the questions presented. Deerbrook requests that the Court order a second session of Carcione's deposition, requiring that : 1) Mr. Carcione provide straightforward, non-argumentative responses; 2) the Court order that a discovery referee preside over the second session of Carcione's deposition at Plaintiffs' expense;

---

[10] The Court notes that Dorrohs' counsel has already answered both of these questions in the Joint Statement. (Doc. 75, at pg. 36, fn. 20).

13

and 3) that the Court order monetary sanctions in the amount of $6,020.00 to compensate Deerbrook for the cost and expense of bringing this motion.

      The Dorrohs contend that they allowed Mr. Carcione to be deposed as a fact witness in this case. However, they argue that Deerbrook's questions at the deposition were inappropriate as they went beyond the scope of a fact witness and instead asked questions: 1) that required legal analysis, 2) that related to the attorney client privilege and work product, and 3) that were unrelated to this case. The Dorrohs contend that Mr. Carcione answered questions to the best of his ability and that Deerbrook has not identified any proper questions under *Shelton* that went unanswered.

      The Court has reviewed the transcript and finds that a second deposition is warranted as Mr. Carcione's and Mr. Markowitz's actions in the deposition were unresponsive and uncooperative. Likewise, many of the questions posed by Mr. Klee, Deebrook's attorney, were not clearly worded, or would undoubtedly illicit a privilege or relevancy objection. In the second deposition, Mr. Carcrione shall answer questions related to the factual matters of this case, i.e., the dates and times that certain events occurred, as well as his reasons for declining to accept Deerbrook's $15,000.00 settlement offer with Superior National listed as co-payee. Since the Dorrohs are arguing bad faith based on Deerbrook's rejection of the settlement offer at the subsequent state proceedings, and Deerbrook's alleged misconduct conduct at the bankruptcy proceedings, Mr. Carcione shall also answer questions on those topics if he was involved in those proceedings. In reaching this conclusion, the Court is not giving Deerbrook carte blanch to pose any questions it wishes with regard to the issues listed above. Deerbrook shall not engage in a fishing expedition. In fact, some information may indeed be protected by a privilege. However, it is clear from the holdings in *Merritt* and *Fireman's Fund Insurance Company* that while certain privileges are waived in third party actions alleging bad faith, it is important to examine the information sought and the specific facts at issue when ruling on privileged matters. In this circumstance, the Court will not adhere to the *Shelton* test but will adopt the more flexible

14

approach outlined in *In re Subpoena Issued to Dennis Friedman* as this is more consistent with the holdings in *Merritt* and *Fireman's Fund Insurance Company*. As such, the Court declines to prospectively carve out the contours of the privilege in this case as it would be inappropriate to do so. When and if the Court is called upon to resolve a specific privilege claim, it will do so.

During any of these depositions, the Court expects that counsel will conduct themselves professionally. The Court directs the parties to Fed. R. Civ. P. 30 (c) which in relevant section provides as follows :

> (1) ***Examination and Cross-Examination***. The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence ...
>
> (2) ***Objections***. An objection at the time of the examination - whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of the taking the deposition, or to any other aspect of the deposition - must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limited ordered by the court, or to repsent a motion under Rule 30(d)(3).
> Fed. R. Civ. P. 30(c)(1) and (2).

Any non-compliance with completing the discovery in the case pursuant to these guidelines will be looked upon with great disfavor. Although the Court has given Deerbrook permission to question the attorneys in this case, the Court expects that Deerbrook will be thoughtful when formulating questions and *only* ask questions that are relevant and necessary. Similarly, Plaintiffs' counsel are forewarned that they shall make a good faith effort toward answering questions and shall invoke privileges or other objections *only* when appropriate and in a professional manner. The Court denies Deerbrook's request for a referee at the second deposition. However, counsel are advised that failure to follow these guidelines will result in the probability of heavy sanctions against the offending attorney or party.

*Sanctions*

Here, both parties are requesting monetary sanctions for bringing these motions. The Dorrohs request $5,400.00 and Deerbrook requests $6,020.00. A party seeking discovery may move for an order compelling an answer if a party fails to permit inspection as requested under

15

Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). If the motion is granted, or if the discovery is provided after the motion is filed, the court may require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion, including attorney fees. Fed. R. Civ. P. 37(5)(A). However, the court must not order payment if the movant filed the motion before attempting in good faith to obtain the discovery without a court order, if the opposing party's non-disclosure, response or objection was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(5)(A)(i-iii).

Similarly, if the motion to compel is denied, the court may require that the movant pay the opposing party its reasonable expenses incurred in opposing the motion including attorney's fees. However, the court must not order payment if the movant filed the motion before attempting in good faith to obtain the discovery without a court order, if the opposing party's non-disclosure, response or objection was substantially justified, or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(5)(B). If the motion is granted in part, and denied in part, the court may apportion reasonable expenses for the motion. Fed. R. Civ. P. 37(5)(C).

Here, the Court has granted both of the parties' motions in part. However, the Court denies both parties' request for sanctions. In this case, neither party has clean hands as both parties have engaged in dilatory tactics. As previously noted, many of these discovery disputes could have been resolved by the parties if counsel had cooperated with each other. It is not this Court's practice to mediate the attorney's personal vendettas. Counsel are cautioned that gamesmanship and future motions to compel without *meaningful* meet and confer will result in the imposition of sanctions.

**ORDER**

Based on the above, Plaintiffs' Motions to Compel and Defendant's Motion to Compel are GRANTED IN PART as outlined in this order. Both parties' request for sanctions is DENIED. All of the relevant discovery outlined in this order shall be completed by **October 31,**

16

**2012**. All other deadlines in this case remain in effect as outlined in this Court's scheduling order issued on March 29, 2012. (Doc. 51).

IT IS SO ORDERED.

**Dated:   September 21, 2012**                         **/s/ Gary S. Austin**
                                                                                    UNITED STATES MAGISTRATE JUDGE

17