1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT DORROH, BARBARA                    No.  1:11-cv-02120-DAD-EPJ
     DORROH, CEDAR SOL WARREN,
12
                Plaintiffs,
13                                              ORDER GRANTING DEFENDANT'S
        v.                                      MOTION FOR SUMMARY JUDGMENT
14                                              AND DENYING PLAINTIFFS' PARTIAL
                                                MOTION FOR SUMMARY JUDGMENT
15   DEERBROOK INSURANCE
     COMPANY, a wholly-owned subsidiary of
16   Allstate Insurance Company,                (Doc. Nos. 169, 170, 171)

17                Defendant.

18          This matter came before the court on May 17, 2016, for hearing on the parties' cross

19   motions for summary judgment.  Attorneys Charles Maher, Peter Klee, and Charles Danaher

20   appeared on behalf of defendant and attorneys Bradley Elley, Aaron Markowitz, and Joshua

21   Markowitz appeared on behalf of plaintiffs.  The court has considered the briefing submitted by

22   the parties as well as their oral arguments.  For the reasons explained below, defendant's motion

23   for summary judgment will be granted and plaintiffs' motion for partial summary judgment will

24   be denied.

25                               FACTUAL BACKGROUND

26          The following facts are undisputed by the parties on summary judgment.  On March 13,

27   2000, Cedar Warren ("Warren") and Robert Dorroh were involved in a car accident.  (Doc. No.

28   169-2 at 2, ¶ 2.)  Warren was at fault for the accident, and Mr. Dorroh was seriously injured as a

                                             1

result.  (*Id.*)

Warren was insured by defendant Deerbrook Insurance ("Deerbrook"), and that coverage had a policy limit of $15,000.[1]  (*Id.* at 2, ¶ 1.)  Because Dorroh was driving to work at the time of the accident, Dorroh also applied for workers' compensation in June 2000, following the incident.  (*Id.* at 2, ¶ 3.)  His workers' compensation carrier is third party Superior National Insurance Company ("Superior National").  (*Id.* at 2, ¶ 4.)

In July 2000, Robert and Barbara Dorroh requested that defendant Deerbrook settle their claim against Warren for $15,000.  (Doc. No. 174-1. at 2, ¶ 4.)  Defendant agreed.  (*Id.* at 2, ¶ 5.)  Before defendant had issued a check to the Dorrohs, however, Superior National contacted defendant Deerbrook to inform them of a potential lien on any insurance payout.  (Doc. No. 169-2 at 2, ¶ 6.)  Defendant told the Dorrohs that it would issue a check including both the Dorrohs and Superior National as the payee.  (*Id.* at 3, ¶ 9.)[2]  The Dorrohs responded by informing defendant Deerbrook that Mr. Dorroh's workers' compensation claim had been denied by Superior National (*Id.* at 3, ¶ 10.)  In November 2000, the Dorrohs demanded that defendant's check be made payable solely to them.  (*Id.* at 3, ¶ 10.)  In January 2001, the Dorrohs reiterated their demand, and offered to "indemnify your insured and hold your insured harmless from any third parties."  (*Id.* at 4–5, ¶ 12.)  In the end, the Dorrohs and Deerbrook Insurance Company could not reach a settlement agreement.  (*Id.* at 3–4, ¶¶ 12–14.)

The Dorrohs filed suit against Warren in February 2001.  (*Id.* at 5, ¶ 14.)  In 2006, the Dorrohs proposed to Deerbrook a stipulated judgment for an unspecified amount in exchange for

---

[1]  James Warren, the owner of the vehicle involved in the March 2000 car accident, was the named insured on the Deerbrook policy.  (Doc. No. 169-2 at 2, ¶ 1.)  Cedar Warren, the negligent driver, was listed as an additional insured on the policy.  (*Id.*)

[2]  It appears that from this point forward the litigation of this dispute over coverage with a policy limit of $15,000 reached levels far exceeding the value of the policy itself.  Whether that was because defendants stubbornly refused to resolve the claim due merely the possible threat of having to pay Superior National's lien in addition to the $15,000 payout to plaintiff or due to the refusal of plaintiffs' counsel to establish that there was no such lien—or perhaps due to a desire by plaintiffs' counsel to set up this bad faith claim, as defendant contends—is a question not before this court.  What is clear, however, is that the ensuing litigation has now gone on for more than fifteen years and there can be no doubt that the legal fees incurred over that period of time by the parties dwarf the meager policy limit.

a covenant not to execute against Warren.  (Doc. No. 174-1 at 8, ¶ 29.)  However, the parties were unable to agree to the stipulated judgment.  (*Id.* at 8, ¶ 31.)  In 2007, Warren filed for bankruptcy in the District of Oregon.  (*Id.* at 9, ¶ 32.)  Warren listed a bad faith claim against defendant Deerbrook as an asset in his bankruptcy filing.  (*Id.* at 9–11, ¶¶ 34–35, 39.)  Following the granting of relief by the bankruptcy court from the automatic stay, the case ultimately went to bench trial in the Tuolumne County Superior Court[3] and, in May 2008, the Dorrohs were awarded a judgment in the amount of approximately $16,520,169.65 against Warren.  (*Id.* at 9, ¶ 32.)

On April 19, 2011, the trustee in Warren's bankruptcy filed this suit against defendant Deerbrook.  (Doc. No. 1.)  In July 2011, the trustee and the Dorrohs agreed to assign the claim from Warren to the Dorrohs in exchange for $215,000, and a promise not to execute upon the judgment against Warren.  (Doc. No. 24.)  On September 19, 2011, the Dorrohs substituted into this action as plaintiffs.  (Doc. No. 26.)  This case was transferred from the U.S. District Court for the District of Oregon to this court in December of 2011.  (Doc. No. 36.)  The trustee in Warren's bankruptcy action was discharged on May 9, 2012.  (Doc. No. 129 at 2.)  On June 18, 2015, Cedar Sol Warren was granted permission by the court to substitute in as plaintiff in this action to pursue his personal claim for bad faith against Deerbrook, which claim was not assignable in his bankruptcy action.  (Doc. Nos 127, 129 at 2.)

On September 25, 2011, plaintiffs Robert and Barbara Dorroh and Cedar Sol Warren filed the First Amended Complaint ("FAC") upon which this action now proceeds.  (Doc. No. 136.)  Therein, plaintiffs assert two causes of action: (i) breach of the insurance contract between Deerbrook and Warren, including breach of the implied duty of good faith and fair dealing, based on defendant Deerbrook's failure to accept the 2001 settlement, (*Id.* at 4–5); and (ii) tortious breach of the duty of good faith and fair dealing based on defendant's failure to accept the 2001 settlement, failure to enter into the proposed stipulated judgment of 2006, and advising plaintiff Warren to file for bankruptcy.  (*Id.* at 6–7.)  Plaintiffs seek the award of economic damages, damages for plaintiff Warren's mental and emotional distress, punitive damages, and attorneys'

---

[3]  *See Dorroh v. Warren*, No. F055781, 2009 WL 2622814, at *2 (Aug. 27, 2009) (unpublished).

1  fees.  (*Id.* at 5–6.)

2      On April 4, 2016, defendant Deerbrook filed a motion for summary judgment, which they

3  amended on the same day.  (Doc. Nos. 169–70.)  Plaintiffs filed their opposition to the motion on

4  May 3, 2016.  (Doc. No. 174.)  Defendant filed their reply on May 10, 2016.  (Doc. No. 175.)

5      On April 11, plaintiffs filed a motion for partial summary judgment.  (Doc. No. 171.)

6  Defendant filed an opposition to plaintiffs' motion on April 29, 2016, and plaintiffs filed their

7  reply on May 10, 2016.  (Doc. Nos. 174, 176.)

8      Following the May 17, 2016 hearing on the parties' cross motions for summary judgment,

9  both plaintiffs and defendant filed letter briefs with the court further summarizing their arguments

10  on summary judgment and providing additional authorities in support thereof.  (Doc. Nos. 183–

11  184.)

12                          ARGUMENTS OF PARTIES

13      Defendant advances a number of arguments in moving for summary judgment in their

14  favor.  (Doc. Nos. 169–170.)  In particular, defendant contends that plaintiffs' contract and tort-

15  based bad faith claims concerning the 2001 settlement offer are barred by California law; that

16  plaintiffs' additional bad faith claims—those concerning the stipulated judgment proposal of 2006

17  and plaintiffs' bankruptcy proceedings—all fail as a matter of law; and that plaintiffs are not

18  entitled to punitive damages because they have not demonstrated the requisite malice, fraud, or

19  oppression.  (*Id.*)

20      Plaintiffs move for partial summary judgment on their claim that Deerbrook acted in bad

21  faith by rejecting the Dorrohs' 2001 settlement offer.  (Doc. No. 171.)  In their opposition to

22  defendant's motion, plaintiffs also argue that genuine issues of material fact remain, thereby

23  precluding summary judgment as to their bad faith claims concerning the stipulated judgment

24  proposal of 2006, the bankruptcy proceedings, and their entitlement to punitive damages, (Doc.

25  No. 174 at 45–46, 48–54).

26                            LEGAL STANDARDS

27      Summary judgment is appropriate when the moving party "shows that there is no genuine

28  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

                                              4

Civ. P. 56(a).  In a motion for summary judgment, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may meet its burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323. When the non-moving party bears the burden of proof at trial, however, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its burden, the burden then shifts to the opposing party to demonstrate the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings

1   but is required to tender evidence of specific facts in the form of affidavits, and/or admissible

2   discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P.

3   56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

4   contention is material, i.e., a fact that might affect the outcome of the suit under the governing

5   law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v.*

6   *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

7   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

8   party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

9        In the endeavor to establish the existence of a factual dispute, the opposing party need not

10  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

11  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

12  trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

13  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

14  *Matsushita*, 475 U.S. at 587 (citations omitted).

15       When evaluating the evidence to determine whether there is a genuine issue of fact, the

16  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

17  party." *Walls v. Central Costa Cty. Transit Authority*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the

18  opposing party's obligation to produce a factual predicate from which the inference may be

19  drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

20  *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

21  party "must do more than simply show that there is some metaphysical doubt as to the material

22  facts." *Matsushita*, 475 U.S. at 587.  Where the record taken as a whole could not lead a rational

23  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

24                                              <u>ANALYSIS</u>

25  **I.      <u>Request for Judicial Notice</u>**

26       At the outset, defendant Deerbrook requests that the court take judicial notice of the

27  following: (i) the amended notice of claim of lien pursuant to Labor Code §§ 3850–3864 that the

28  California Insurance Guarantee Association, as administrator for Superior National, filed in the

1  case of *Robert Dorroh v. Ford Motor Company, et al.*, Tuolumne County Superior Court, Case

2  No. CV48013; (ii) the motion and notice of intent to settle and compromise that the bankruptcy

3  trustee filed in *In re Cedar Warren*, United States Bankruptcy Court for the District of Oregon,

4  Case No. 07-60674-fra7; (iii) creditors Robert and Barbara Dorroh's objection to the trustee's

5  notice of intent to settle, filed on May 18, 2009, in *In re Cedar Warren*; (iv) the memorandum of

6  opinion issued by the United States Bankruptcy Court for the District of Oregon on March 22,

7  2010 in *In re Cedar Warren*[4]; and (v) the notice of intent to sell that the bankruptcy trustee filed

8  on June 16, 2011, in *In re Cedar Warren*.  (Doc. No. 169-4 at 2.)  The court grants defendant's

9  requests for judicial notice, but only for purposes of noticing the existence of the relevant

10  lawsuits, the claims made therein, and the orders issued.  *See Lexington Ins. Co. v. Energetic Lath*

11  *& Plaster, Inc.*, No. 2:15-cv-00861-KJM-EFB, 2015 WL 5436784, at *3 (E.D. Cal. Sept. 15,

12  2015).

13  **II.      Bad Faith Claims**

14          As noted, in moving for summary judgment in its favor, defendant Deerbrook argues that

15  it did not act in bad faith by: refusing the Dorrohs' 2001 settlement offer; failing to agree to

16  plaintiffs' 2006 proposal for a stipulated judgment; or advising Warren to file for bankruptcy.

17  (Doc. No. 170 at 24–46.)  Plaintiffs, moving for partial summary judgment, argue that defendant

18  acted in bad faith as a matter of law by rejecting the 2001 settlement.  (Doc. No. 171-1 at 8–12.)

19          "Because this case is in federal court on the basis of diversity of citizenship, we apply 'the

20  law of the State,' California."  *Gibbs v. State Farm Mut. Ins. Co.*, 544 F.2d 423, 426 (9th Cir.

21  1976) (citing *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938)); *see also Cuprite Mine Partners*

22  *LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015).  Under California law, all contracts contain

23  an implied covenant of good faith and fair dealing.  *San Jose Production Credit Ass'n v. Old*

24  *Republic Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984); *see also Casas v. Carmax Auto*

25  *Superstores California LLC*, 224 Cal. App. 4th 1233, 1237 (2014); *Ladd v. Warner Bros.*

---

[4]  Defendant's request for judicial notice refers to this order as having been issued by the United
States District Court.  (Doc. No. 169-4 at 2.)  However, the memorandum opinion in question was
issued by Bankruptcy Judge Frank R. Alley, III of the United States Bankruptcy Court for the
District of Oregon.  (*See* Doc. No. 169-12 at 32–43.)

1   *Entertainment, Inc.*, 184 Cal. App. 4th 1298, 1306 (2010).  The implied covenant generally

2   requires contracting parties to refrain from acting so as to injure the right of the other to receive

3   the benefits of the agreement.  *Id.*  In particular, the implied covenant requires liability insurers to

4   accept reasonable settlement offers by third party victims.  *Gibbs*, 544 F.2d at 426; *see also Du v.*

5   *Allstate Ins. Co.*, 697 F.3d 753, 759 (9th Cir. 2012); *Crisci v. Sec. Ins. Co. of New Haven, Conn.,*

6   66 Cal. 2d 425, 430 (l967).

7         To determine whether a settlement offer is reasonable, California courts typically apply an

8   objective standard as opposed to a subjective one.  *Morris v. Paul Revere Life Ins. Co.*, 109 Cal.

9   App. 4th 966, 973 (2003); *see also Lincoln General Ins. Co. v. Access Claims Adm'rs, Inc.*, 596

10  F. Supp. 2d 1351, 1369 (E.D. Cal. 2009) (acknowledging that the minority position in California

11  treats breach of the good faith covenant as requiring scienter, but finding that "the majority of

12  courts hold that a breach of the covenant occurs when a party engages in objectively unreasonable

13  conduct," regardless of the actor's motive); *cf. McClatchy Newspapers, Inc. v. Continental Cas.*

14  *Co.*, No. 1:14-cv-00230-LJO-SAB, 2015 WL 2340246, at *11 (E.D. Cal. May 13, 2015)

15  (suggesting that the standard is subjective but citing a Ninth Circuit decision that was based on

16  Arizona law); *Careau & Co. v. Security Pacific business Credit, Inc.*, 222 Cal. App. 3d 1371,

17  1395 (1990) (stating that breach of the good faith covenant requires "a conscious and deliberate

18  act").

19        Under California law a settlement offer will be found to be reasonable if four conditions

20  are met: (i) settlement offer has terms that are "are clear enough to have created an enforceable

21  contract resolving all claims"; (ii) "all of the third party claimants have joined in the demand";

22  (iii) the offer "provides for a complete release of all insureds"; and (iv) "the time provided for

23  acceptance does not deprive the insurer of an adequate opportunity to investigate and evaluate its

24  insured's exposure."  *Graciano v. Mercury Gen. Corp.*, 231 Cal. App. 4th 414, 425 (2014); *see*

25  *also Wallace v. Allstate Ins. Co*., No. C 97-3806 MJJ, 1999 WL 51822, at *1 (N.D. Cal. Jan. 29,

26  1999) (to serve as a predicate for a bad faith failure to settle claim, the settlement demand must

27  "provide for a complete release of all insureds"), *aff'd*, 221 F.3d 1350 (9th Cir. 2000); *Strauss v.*

28  *Farmers Ins. Exchange*, 26 Cal. App. 4th 1017, 1020 (1994) ("an insurer may, within the

1    boundaries of good faith, reject a settlement offer that does not include a complete release of all

2    of its insureds").

3          A workers' compensation carrier may be a third party claimant in an injured worker's

4    legal action against tortfeasors.  Under California Labor Code § 3852, an employer who provides

5    benefits to an injured worker is entitled to reimbursement rights against the negligent party.  Cal.

6    Lab. Code § 3852.  One manner in which an employer may obtain reimbursement is to assert a

7    lien in an injured worker's action, with the right to assert such a lien accruing on the date of

8    injury.  *Associated Constr. & Eng'g Co. v. Workers' Comp. Appeals Bd.*, 22 Cal. 3d 829, 833

9    (1978); *Fremont Comp. Ins. Co. v. Sierra Pine, Ltd.*, 121 Cal. App. 4th 389, 396 (2004); *see also*

10   *Regents of Univ. of California v. Bernzomatic*, No. 2:10-cv-1224 FCD GGH, 2010 WL 5088410,

11   at *2 (E.D. Cal. Dec. 7, 2010).  If an employer has filed a lien in an employee's legal action

12   against a tortfeasor, then any settlement reached between the employee and the tortfeasor requires

13   the consent of the employer.  Cal. Lab. Code § 3859(a)[5]; *Board of Administration v. Glover*, 34

14   Cal. 3d 906, 913–915 (1983); *see also Bernzomatic*, 2010 WL 5088410, at *3 (noting that a

15   liability insurer may incur liability to a known lienholder employer by settling with an injured

16   employee without first obtaining the known lienholder's consent).

17         There is a limited exception to the general rule that employers with liens in employee

18   actions against tortfeasors must provide their consent to settlements between employees and

19   tortfeasors.  This exception exists when an employee enters into a "segregated settlement," i.e.,

20   when an employee settles their claim for an amount that is exclusive of the employer-provided

21   worker's compensation benefits.  Cal. Lab. Code § 3859(b)[6]; *see Insurance Co. of North America*

22   *v. T.L.C. Lines*, 50 Cal. App. 4th 90, 98 n.2 (1996); *Marrujo v. Hunt*, 71 Cal. App. 3d 972, 978

23

---

24   [5]  California Labor Code § 3859(a) provides: "No release or settlement of any claim under this
25   chapter as to either the employee or the employer is valid without the written consent of both."

26   [6]  California Labor Code § 3859(b) provides: "Notwithstanding anything to the contrary
     contained in this chapter, an employee may settle and release any claim he may have against a
27   third party without the consent of the employer.  Such settlement or release shall be subject to the
     employer's right to proceed to recover compensation he has paid in accordance with Section
28   3852."

1   (1977); *Montgomery v. United States*, No. 09-CV-1588 JLS (WVG), 2012 WL 124854, at *5–6

2   (S.D. Cal. Jan. 17, 2012) ("If . . . the settlement is 'segregated,' meaning the employee succeeded

3   in separating his claim against the third party from the carrier's subrogated right of

4   reimbursement, . . . the employee may 'settle his own claim for a sum exclusive of the amounts

5   he had already received in the form of a workers' compensation award without jeopardizing the

6   [carrier's] subrogation right.'") (and cases cited therein).  In such circumstances, an employer's

7   consent to settlement is not required, and the settlement is free from the employer's

8   reimbursement claims.  *Marrujo*, 71 Cal. App. 3d at 978.  However, intent to create and enter a

9   segregated settlement must be expressly stated.  *T.L.C. Lines*, 50 Cal. App. 4th at 98 n.2.

10          Turning to the implied covenant of good faith and fair dealing, California courts have

11   recognized different ways in which liability insurers can comply with that covenant.  For

12   instance, it has been recognized that "when a liability insurer timely tenders its 'full policy limits'

13   in an attempt to effectuate a reasonable settlement of its insured's liability, the insurer has acted in

14   good faith as a matter of law."  *Graciano*, 231 Cal. App. 4th at 426; *see also Boicourt v. Amex*

15   *Assurance Co.*, 78 Cal. App. 4th 1390, 1400 (2000); *State Farm Mut. Auto. Ins. Co. v. Crane*, 217

16   Cal. App. 3d 1127, 1136 (1990).  It is also clearly established that a liability insurer issuing a

17   check that is jointly payable to claimants and known lienholders has not proceeded in bad faith.

18   *See Fitzgerald v. Liberty Mut. Ins. Co.*, No. SACV 13-0262 DOC(JPRx), 2014 WL 462654, at *5

19   (C.D. Cal. Feb. 4, 2014); *see also Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 827 (9th Cir. 2003)

20   (concluding that the insurer that required a check to be made jointly payable to both the claimant

21   and the known potential lienholders did not engage in an unfair business practice prohibited by

22   California Business & Professions Code § 17200); *Coe v. State Farm Mut. Auto. Ins. Co.*, 66 Cal.

23   App. 3d 981, 992 (1977) ("Appellant's strongest contention is that, as a matter of law, the April 4,

24   1968, letter . . . was not a settlement 'offer,' because the facts that the State Compensation

25   Insurance Fund was neither a party to it nor mentioned in it, and that no provision had been made

26   for its consent or for disposition of its right to reimbursement for worker's compensation benefits

27   it had paid out on the Coe claims.").

28   /////

1    An insurer breaches the implied covenant of good faith, however, if it engages in a bad

2    faith refusal to settle claims against its insured.  *See Wolkowitz v. Redland Ins. Co.,* 112 Cal. App.

3    4th 154, 162 (2003) ("The implied covenant imposes on an insurer the duty to accept a reasonable

4    settlement offer within policy limits when there is a substantial likelihood of a judgment against

5    the insured exceeding policy limits."); *see also Ace Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 2

6    Cal. App. 5th 159, 167 (2016) ("An insurer's liability for failing to accept a reasonable settlement

7    offer 'is imposed not for a bad faith breach of the contract but for failure to meet the duty to

8    accept reasonable settlements, a duty included within the implied covenant of good faith and fair

9    dealing.'") (citation omitted).  An action for an insurer's bad faith failure to settle claims sounds

10    in both contract and tort.  *Wolkowitz,* 112 Cal. App. 4th at 162; *see also Crisci v. Security Ins.*

11    *Co.*, 66 Cal. 2d 425, 432 (1967); *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161

12    (9th Cir. 2002) (breach of the good faith covenant "sounds in tort notwithstanding that the denial

13    of benefits may also constitute breach of the contract").  Thus, a liability insurer who refuses to

14    settle a third party suit may be liable for damages proximately caused by the failure to settle,

15    including attorney's fees and potential punitive damages.  *Amadeo*, 290 F.3d at 1161; *see also*

16    *Brandt v. Superior Court*, 373 Cal. 3d 813, 817 (1983) ("The attorney's fees are an economic

17    loss—damages—proximately caused by the tort."); *Levin v. Gulf Ins. Group*, 69 Cal. App. 4th

18    1282, 1287–88 (1999).

19    To show a bad faith failure to settle, a plaintiff must demonstrate that an insurer withheld

20    benefits, and that it did so unreasonably.  *See Guebara v. Allstate Ins. Co*., 237 F.3d 987, 992 (9th

21    Cir. 2001); *Gaylord v. Nationwide Mut. Ins. Co.*, 776 F. Supp. 2d 1101, 1122 (E.D. Cal. 2011);

22    *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App. 4th 60, 86 (2010); *Archdale v.*

23    *Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 464 (2007) ("[W]hether a liability

24    insurer's failure to accept a settlement offer constituted a breach of the implied covenant depends

25    on whether that settlement offer was 'reasonable.'").  An insurer does not breach the implied

26    covenant if it never had the opportunity to settle—that is, if there was not a reasonable settlement

27    offer made within the policy limits.  *Howard v. Am. Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498,

28    524–25 (2010); *McLaughlin v. Nat'l Union Fire Ins. Co.*, 23 Cal. App. 4th 1132, 1147 (1994);

11

1    *Coe v. State Farm Mut. Auto. Ins. Co.*, 66 Cal. App. 3d 981, 989 (1977).  A settlement demand is

2    not within policy limits if it involves an excess judgment or exposes insurers to claims from

3    lienholders.  *Coe*, 66 Cal. App. 3d at 994.  Moreover, an insurer does not breach the implied

4    covenant if there is a "genuine dispute" concerning the liability insurer's legal obligations.

5    *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003) (noting that "under the Ninth

6    Circuit's interpretation of California law, a genuine dispute may concern either a reasonable

7    factual dispute or an unsettled area of insurance law"); *American Cas. Co. v. Krieger*, 181 F.3d

8    1113, 1123 (9th Cir. 1999); *see also Gaylord*, 776 F. Supp. 2d at 1124–26 (recognizing that "even

9    an erroneous understanding of the law, if reasonable, is not bad faith").

10        **a.  The 2001 Settlement Offer**

11        Defendant and plaintiffs each move for summary judgment in their favor with respect to

12    plaintiffs' bad faith claims concerning defendant's refusal of their 2001 settlement offer.  (Doc.

13    No. 170 at 24–46.)

14        Defendant Deerbrook contends that it did not act in bad faith by refusing the Dorrohs'

15    January 2001 settlement offer, making four arguments.  (*Id.*)  First, defendant Deerbrook notes

16    that it made a timely tender of the full policy limits to effectuate a settlement with the Dorrohs,

17    and thus acted in good faith as a matter of law.  (*Id.* at 17, 45–46.)  In support of this argument on

18    summary judgment, defendant points to its letter to the Dorrohs, in which it offered to settle

19    claims with the Dorrohs for $15,000.  (Doc. No. 169-11 at 93.)

20        Second, defendant argues that the Dorrohs' January 2001 settlement offer was

21    unreasonable as a matter of law, and that Deerbrook therefore rejected the offer in good faith.

22    (Doc. No. 170 at 17, 44–45.)  In particular, defendant notes that: (a) Superior National, a third

23    party claimant, did not join in the settlement demand; and (b) the Dorrohs only offered to release

24    James Warren, the named insured and owner of the vehicle, and not Cedar Warren, the additional

25    insured and negligent driver.  (*Id.*)  The defendant points to the following evidence before the

26    court on summary judgment in support of this argument: letters between the Dorrohs and

27    Deerbrook, in which the Dorrohs agreed to settle their claim against Warren for the policy limits,

28    but refused to accept a check that was made jointly payable to both the Dorrohs and Superior

12

1    National, (Doc. Nos. 169-11 at 93, 95–96, 98); and a letter from the Dorrohs in which they

2    offered to "indemnify your insured and hold your insured harmless from any third parties." (Doc.

3    No. 169-11 at 100–101.)

4          Third, defendant Deerbrook contends that it did not act in bad faith by rejecting the

5    Dorrohs' 2001 settlement offer because the proposed settlement was not within policy limits.

6    (Doc. No. 170 at 15, 33–36.)  In particular, defendant argues that accepting the Dorrohs'

7    settlement proposal would have exposed Deerbrook to a recoupment action from Superior

8    National, a known lienholder.  (*Id.* at 15, 32–36.)  Defendant Deerbrook relies on the following

9    evidence which is before the court on summary judgment in support of this contention: a

10   September 2000 letter sent by Superior National to Deerbrook, in which Superior National

11   provided notice of their lien on any settlement, (*Id.* at 34); and letters sent by Deerbrook to the

12   Dorrohs, in which Deerbrook requested, but did not then receive, proof that Mr. Dorroh was

13   denied workers' compensation benefits, (*Id.* at 43).  Defendant Deerbrook emphasizes that any

14   settlement on its part with the Dorrohs required the consent of Superior National under California

15   Labor Code § 3852(a), because the Dorrohs' settlement proposal was not segregated from

16   Superior National's reimbursement claims.  (*Id.* at 27–29.)  Defendant cites the opinion of

17   plaintiffs' own workers' compensation expert, Steven Stiemers, who described the Dorrohs'

18   January 2001 settlement offer as "an offer for an unsegregated settlement." (Doc. Nos. 169-12 at

19   102; 170 at 28.)

20         Fourth, defendant Deerbrook contends that even if this interpretation of its legal

21   obligations was ultimately incorrect, its rejection of the Dorrohs' 2001 settlement offer was

22   objectively reasonable and therefore could not have constituted bad faith.  (Doc. No. 170 at 36–

23   39.)  In support of this argument, defendant cites to the decision of the U.S. Bankruptcy Court for

24   District of Oregon, in which that court stated "the estate, if it were to bring the bad faith claim to

25   trial, would not be likely to prevail." (*Id.* at 23; Doc. No. 175 at 43 n.21.)  Defendant

26   acknowledges that plaintiffs, in 2009, ultimately produced a letter from Superior National

27   documenting the denial of Mr. Dorroh's workers compensation claim.  (Doc. No. 170 at 42–44.)

28   However, defendant Deerbrook notes that this letter was not produced until 2009, many years

                                                13

1   after the Dorrohs' settlement offer was made in 2001, and argues that the reasonableness of its

2   decisions must be judged by considering the circumstances at the time the decisions were made

3   rather than with hindsight.  (*Id.*)  Defendant Deerbrook adds that it was not required to accept

4   plaintiffs' representations that the workers' compensation claim had been denied without some

5   proof of the same.  (*Id.* at 44.)

6          In moving for summary judgment in their own favor and opposing defendant's summary

7   judgment motion, plaintiffs argue that defendant Deerbrook acted in bad faith by rejecting the

8   2001 settlement offer.  (Doc. No. 171-1 at 11.)  Plaintiffs advance two grounds in support of this

9   argument.  First, plaintiffs contend that the settlement offer was reasonable because it accounted

10  for known liens and was within the policy limits.  (*Id.* at 10, 14.)  In this regard, plaintiffs argue

11  that, under California law, the Dorrohs had no obligation to obtain the consent of Superior

12  National before settling with defendant Deerbrook, regardless of whether the settlement was

13  segregated or unsegregated.  (*Id.* at 11–12; Doc. No. 174 at 19–20.)  Plaintiffs dispute defendant's

14  characterization of California Labor Code § 3852(a) as requiring liability insurers to obtain

15  consent of known lienholders before settling with injured employees.  Instead, plaintiffs argue

16  that under § 3852(b), liability insurers can settle with injured employees absent the consent of

17  known lienholders, and that in such cases, known lienholders may recover only amounts paid to

18  employees prior to the settlement.  (Doc. No. 171-1 at 11–12.)  Plaintiffs also contend that the

19  Dorrohs' settlement offer would in fact have shielded Deerbrook from any liability.  (Doc. No.

20  171-1 at 14.)  In terms of evidence before the court on summary judgment, plaintiffs point to their

21  counsel's January 31, 2001 letter to defendant, which stated that "we will indemnify your insured

22  and hold your insured harmless from any third parties who may claim against your insured for

23  additional monies over and above the $15,000." (*Id.* at 14–15.)[7]

24  /////

25

26  [7]  In their reply brief plaintiffs add that the proposed settlement offered to release both James and
    Cedar Warren, contrary to the defendant's contention that the offered release did not include

27  Cedar Warren.  (Doc. No. 176 at 12.)  On this point, plaintiffs assure the court that "the parties
    always understood the settlement was going to be on behalf of all insureds, particularly as it was

28  always about Cedar's responsibility, as he was the driver." (Id.)

1    Second, plaintiffs argue that defendant Deerbrook's position was not objectively

2    reasonable because Deerbrook did not have a legitimate reason for demanding that the workers'

3    compensation carrier be included as a payee on any settlement check.  (Doc. No. 171-1 at 15.)[8]

4    The court has considered the arguments of both parties and finds those advanced by

5    defendant Deerbrook to clearly be the more persuasive.  Under California law, Deerbrook's

6    timely tender of full policy limits precludes any bad faith claims premised on a claimed refusal to

7    settle.  *See Boicourt*, 78 Cal. App. 4th at 1400 ("[T]he fact that Amex later did tender policy

8    limits after litigation commenced still might serve as the basis for a complete defense of this bad

9    faith suit.  A timely settlement offer by a liability insurer does preclude a bad faith action.")

10   Moreover, defendant has come forward on summary judgment with evidence establishing that the

11   Dorrohs' settlement demand was not reasonable.  As defendant accurately observes, California

12   Labor Code § 3859(a) requires an employer with a lien in an employee's action against a

13   tortfeasor to consent to any settlements between employees and tortfeasors.  *McKinnon v. Otis*

14   *Elevator Co*., 149 Cal. App. 4th 1125, 1132-34 (2007); *Bailey v. Reliance Insurance Co*., 79 Cal.

15   App. 4th 449, 455 (2000); *Regents of the University of California v. Bernzomatic*, No. 2:10-cv-

16   1224 FCD GGH, 2010 WL 5088410, at *2 (E.D. Cal. Dec. 7, 2010).  This is because liability

17   insurers may incur liability to known lienholder employers by settling with injured employees

18   without first obtaining known lienholders' consent.  While plaintiffs argue that § 3859 permits

19   liability insurers to settle claims with injured employees absent the consent of known lienholders

20   in all circumstances, and not simply when the parties have agreed to a segregated settlement, this

21   argument is contradicted by the decisions of California courts interpreting this provision.  *See,*

22   *e.g.*, *Board of Administration v. Glover*, 34 Cal. 3d 906, 918–919 (1983) ("PERS, like any other

23   employer, could recoup its payments from an employee who settles a tort claim (which includes

24   the employer's reimbursement claim) against a third party without giving the employer notice and

25   obtaining its written consent thereto."); *Insurance Co. of North America v. T.L.C. Lines*, 50 Cal.

26   App. 4th 90, 101 (1996) (noting that a known lienholder who is not given notice of an

27

_____

28   [8]  Plaintiffs do not, however, address defendant Deerbrook's contention that its timely tender of
the policy limits establishes its good faith as a matter of law.

1    unsegregated settlement between a liability insurer and an injured employee has a cause of action

2    against the liability insurer).

3         Here, defendant has presented evidence on summary judgment establishing that the

4    Dorrohs attempted to settle with Deerbrook without joining a third party claimant, Superior

5    National.  Defendant has also come forward with evidence that the Dorrohs' settlement offer was

6    beyond the policy limits, as it would have exposed Deerbrook to potential liability from the

7    known lienholder, Superior National.  In contrast, plaintiffs on summary judgment have not come

8    forward with any evidence that Superior National joined in the settlement demand, or that the

9    Dorrohs' 2001 settlement proposal was an offer for a segregated settlement, such that the

10   recognized exception to the consent requirement of California Labor Code § 3859 applied to the

11   offer.  Although plaintiffs claim they offered to indemnify Deerbrook from subsequent liability to

12   third parties, they have not established that such a promise can transform a settlement proposal

13   that ignores known lienholders into one within policy limits.

14        Accordingly, in light of the evidence before the court on summary judgment, drawing all

15   reasonable inferences from that evidence in favor of plaintiffs, the court concludes defendant is

16   entitled to judgment in its favor with respect to plaintiffs' bad faith claims against Deerbrook

17   based on the Dorrohs' 2001 settlement offer.[9]

18        **b.  2006 Stipulated Judgment**

19        In moving for summary judgment in its favor, defendant Deerbrook contends that it also

20   cannot be held liable for failing to agree to plaintiffs' 2006 proposal calling for entry of a

21   stipulated judgment.  (Doc. No. 170 at 46.)  Defendant advances four arguments in support of this

---

[9]  In their opposition to defendant's motion for summary judgment, plaintiffs also appear to suggest that defendant's failure to inform Warren of the Dorrohs' 2001 settlement offer is an independent basis for its bad faith liability.  (Doc. No. 174 at 46–47.)  First, plaintiffs did not allege such a claim in their FAC.  *See Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (observing that "summary judgment is not a procedural second chance to flesh out inadequate pleadings").  In any event, the court has concluded on summary judgment that Deerbrook did not refuse a settlement offer that was within the policy limits, thus precluding liability based upon any claimed bad faith failure to inform.  *See also Anguiano v. Allstate Ins. Co.*, 209 F.3d 1167, 1169 (9th Cir. 2000) (noting that liability for an insurer's bad faith failure to inform an insured of settlement offers requires evidence of both a failure to inform and a refusal to settle within policy limits).

1    contention.  First, defendant claims that the terms of the offer of judgment were not sufficiently

2    clear to create an enforceable agreement if accepted.  (*Id.* at 48.)  Defendant Deerbrook suggests

3    that the Dorrohs' 2006 proposal to stipulate to an excess judgment did not clearly state the

4    amount of the proposed stipulated judgment, and in reality "offered nothing more than an

5    'agreement to agree.'"  (*Id.* at 47.)  Second, defendant argues that an excess judgment against an

6    insured is not a "demand within the policy limits."  (*Id.* at 47.)  Third, defendant contends that it

7    had had no obligation to accept the proposed stipulation because it was entitled to have the

8    underlying judgment against Warren determined either by trial or consent.  (*Id.* at 48.)  Fourth,

9    defendant Deerbrook argues that the proposed stipulation included inaccurate and unnecessary

10   language that was obviously directed at setting up a claimed basis upon which plaintiffs would

11   pursue a bad faith claim against Deerbrook.  (*Id.* at 47.)  In this regard, defendant specifically

12   cites to a passage in the Dorrohs' proposal which stated that plaintiffs had "made an offer in

13   writing to Deerbrook to settle all claims against Warren arising out of the automobile accident of

14   March 13, 2000, for the $15,000."  (*Id.*) (citing Doc. No. 169-11 at 112.)

15           In their opposition to defendant's summary judgment motion, plaintiffs argue in

16   conclusory fashion that Deerbrook's rejection of the Dorrohs' 2006 stipulated judgment proposal

17   was unreasonable and constitutes a separate basis of bad faith liability.  (Doc. No. 174 at 45–46.)

18   In support of this contention plaintiffs merely assert that "[t]his proposed settlement would not

19   have required Deerbrook to pay anything more than the $15,000 (absent bad faith in 2001); it

20   would have saved Warren from bankruptcy and from a judgment of $16 million-plus; and it

21   would have reduced the damages in this case by more than $6 million."  (*Id.* at 45.)  Additionally,

22   plaintiffs state that "the verdict [of May 2008] was well in excess of the $10 million sought as a

23   stipulated judgment."  (*Id.* at 46.)  Plaintiffs do not, however, directly address defendant's

24   arguments that the terms of proposed stipulated judgment were unclear.  Nor do plaintiffs counter

25   defendant's contention that an excess judgment against an insured does not qualify as a "demand

26   within the policy limits."  Indeed, plaintiffs appear to acknowledge that "Deerbrook certainly had

27   the right to insist on a trial instead of settlement."  (*Id.*)

28   /////

                                                    17

1    Defendant's refusal to stipulate to an excess judgment in 2006 does not, as a matter of

2    law, constitute bad faith. As the defendant points out, a liability insurer cannot be liable for bad

3    faith failure to settle if they reject a settlement offer with unclear terms, or one that is in excess of

4    the policy limits. *See Graciano v. Mercury Gen. Corp.*, 231 Cal. App. 4th 414, 425 (2014)[10];

5    *Howard*, 187 Cal. App. 4th at 524–25. Here, plaintiffs have simply failed to present any legal

6    arguments to the contrary and do not offer any evidence on summary judgment suggesting that

7    the terms of the 2006 stipulated judgment offer were definite and did not involve a judgment

8    potentially in excess of the policy limits.

9    A reasonable factfinder could only conclude from the evidence before the court on

10   summary judgment that defendant's rejection of the 2006 stipulated judgment did not constitute

11   bad faith. Accordingly, defendant is entitled to summary judgment in its favor with respect to

12   this issue.

13   **c.   Warren's Bankruptcy Proceedings**

14   In moving for summary judgment, defendant Deerbrook argues that it did not act in bad

15   faith by advising Warren to file for bankruptcy. (Doc. No. 170 at 49.) Specifically, defendant

16   argues that Deerbrook's counsel never advised plaintiff Warren to file for bankruptcy, but rather

17   only advised Warren that "due to his personal exposure to Dorroh, filing bankruptcy was an

18

19   ─────────────────
     [10] As the court in *Graciano* observed:

20            An insured's claim for bad faith based on an alleged wrongful
              refusal to settle first requires proof the third party made a
21            reasonable offer to settle the claims against the insured for an
              amount within the policy limits. (*Merritt, supra*, 34 Cal. App.3d at
22            p. 877, 110 Cal. Rptr. 511.) The offer satisfies this first element if
              (1) its terms are clear enough to have created an enforceable
23            contract resolving all claims had it been accepted by the insurer
              (*Coe v. State Farm Mut. Auto. Ins. Co*. (1977) 66 Cal. App. 3d 981,
24            992–993, 136 Cal. Rptr. 331 (*Coe*)), (2) all of the third party
              claimants have joined in the demand (*ibid*.), (3) it provides for a
25            complete release of all insureds (*Strauss v. Farmers Ins. Exchange*
              (1994) 26 Cal. App.4th 1017, 1021, 31 Cal. Rptr.2d 811), and (4)
26            the time provided for acceptance did not deprive the insurer of an
              adequate opportunity to investigate and evaluate its insured's
27            exposure.

28   231 Cal App. 4th at 425.

                                            18

1    option about which he should consult with a bankruptcy attorney."  (*Id.*)  Defendant points to the

2    following evidence before the court on summary judgment in support of their arguments: the

3    deposition of Deerbrook's counsel, Gary Gallawa, in which Gallawa testified that he advised

4    Warren of the option of filing for bankruptcy and recommended that he consult with a bankruptcy

5    lawyer, (Doc. No. 169-12 at 54–55, 57–58, 64); and deposition of plaintiff Cedar Warren at

6    which Warren confirmed that attorney Gallawa advised him to seek counsel from a bankruptcy

7    attorney and that he thereafter consulted two such attorneys before filing for bankruptcy, (Doc.

8    No. 169-12 at 113–116, 118–119, 123).  Defendant Deerbrook also argues that, in any event, their

9    counsel was an independent contractor whose actions cannot be imputed to them in this regard.

10   (*Id.*)

11        In opposing defendant's motion for summary judgment, plaintiffs argue that there exists a

12   disputed issue of material fact as to whether defendant Deerbrook acted in bad faith by advising

13   Warren to file for bankruptcy.  (Doc. No. 174 at 48–50.)  In terms of evidence, plaintiffs point to

14   a report prepared by an insurance bad faith expert, Elliot Flood, who states therein that defendant

15   "engaged in unreasonable claims handling by encouraging a bankruptcy filing by Mr. Warren,

16   concealing from him that the bankruptcy was unnecessary, and then by dishonoring its promise to

17   pay for the bankruptcy."  (Doc. No. 174-6 at 15.)  Plaintiffs also rely on a letter from defendant's

18   coverage lawyer, Scott Vida, in which Vida acknowledges that "it is unnecessary for [Warren] to

19   consider bankruptcy protection."  (Doc. Nos. 174-4 at 4, ¶ 10; 174-9 at 163.)  Plaintiffs do not,

20   however, address defendant's argument that the actions of attorneys retained by insurers cannot

21   be imputed to the insurers.

22        In replying to plaintiffs' opposition motion, defendant again denies any exercise of bad

23   faith with respect to Warren's bankruptcy proceedings.  (Doc. No. 175 at 53.)  Defendant moves

24   to strike the Flood report, arguing that it does not meet admissibility standards of Federal Rule of

25   Evidence 702.  (Doc. No. 175-4 at 1–11.)

26        Plaintiffs' bad faith claims related to Warren's filing of bankruptcy proceedings fail as a

27   matter of law.  There is no evidence before the court on summary judgment that defendant's

28   counsel Gallawa ever specifically advised Warren to file for bankruptcy.  More importantly,

1    because an attorney retained by an insurer to defend its insured is an independent contractor, a

2    liability insurer cannot be held liable for the attorney's tortious conduct.  *Lynn v. Superior Court*,

3    180 Cal. App. 3d 346, 349–50 (1986) (granting a writ of mandate and holding that independent

4    counsel retained to conduct litigation is an independent contractor whose liability may not be

5    imputed to his client); *Merrit v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 881 (1973) (holding that

6    acts taken in a case by independent counsel retained to defend an action was not chargeable to the

7    insurer).  Plaintiffs thus cannot demonstrate the existence of a genuine dispute of material fact as

8    to Deerbrook's liability for anything said or done by attorney Gallawa.  Having found that

9    defendant is entitled to summary judgment on this issue, the court does not reach the question of

10   whether the Flood report is admissible under Federal Evidence Rule 702.

11   **III.    Punitive Damages**

12          Defendant also seeks summary judgment in its favor as to plaintiff's' punitive damages

13   claims, arguing that plaintiffs have failed to present any evidence that Deerbrook exhibited the

14   requisite malice, fraud, or oppression.  (Doc. No. 170 at 50–51.)

15          Under California law, a plaintiff seeking punitive damages must prove "that the defendant

16   has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294; *see also Food Pro*

17   *Internat'l Inc. v. Farmers Ins. Exch.*, 169 Cal. App. 4th 976, 994 (2008) (stating that, to award

18   punitive damages, a court must find that "the defendant's acts are reprehensible, fraudulent or in

19   blatant violation of law or policy").  A plaintiff must show his or her entitlement to punitive

20   damages by clear and convincing evidence.  Cal. Civ. Code § 3294; *Amadeo*, 290 F.3d at 1164;

21   *Yang v. Peoples Benefit Ins. Co.*, No. CIV F 06-458 AWI DLB, 2007 WL 1555749, at *15 (E.D.

22   Cal. May 25, 2007).  To be clear and convincing, evidence must be sufficient to support a finding

23   of high probability and it must be so clear as to leave no substantial doubt and sufficiently strong

24   to command the unhesitating assent of every reasonable mind.  *Gathenji v. Autozoners, LLC*, No.

25   CV-F-08-1941 LJO JLT, 2010 WL 843770, at *16 (E.D. Cal. March 10, 2010).  This standard of

26   proof is more demanding than what is required for a claim of bad faith.  *See Amadeo*, 290 F.3d at

27   1164; *Mock v. Michigan Millers Mutual Ins. Co.*, 4 Ca. App. 4th 306, 328 (1992).

28   /////

1   Here, defendant moves for summary judgment with respect to plaintiffs' punitive damages

2   claims, arguing that plaintiffs are not entitled to punitive damages as a matter of law.  (Doc. No.

3   170 at 50.)  In this regard, defendant contends that punitive damages require more than a showing

4   of bad faith, and that plaintiffs have not come forward with evidence even sufficient to

5   demonstrate bad faith conduct on the part of Deerbrook.  (*Id.*)

6   In their opposition to defendant's summary judgment motion, plaintiffs argue that there is

7   a triable issue of fact as to punitive damages.  (Doc. No. 174 at 50–54.)  First, plaintiffs

8   acknowledge that the standard of proof applicable to a claim for punitive damages is the "clear

9   and convincing" standard.  (*Id.* at 50–51.)  Plaintiffs emphasize, however, that on summary

10  judgment they need only show "substantial evidence" of a genuine issue of material fact as to

11  plaintiffs' entitlement to punitive damages.  (*Id.*)  Plaintiffs also argue that Deerbrook did, in fact,

12  exhibit malice, because it consciously disregarded the probability that plaintiffs would be injured

13  absent a settlement of the claim. (*Id.* at 52.)  In support of this argument plaintiffs cite the

14  deposition of Deerbrook claims adjuster Jason Kenady, who testified he would require any

15  lienholder, regardless of the validity of the lien, to be included on a settlement check.  (*Id.* at 53.)

16  According to plaintiffs, "such a policy clearly violated well established laws."  (*Id.*)

17  As noted above, the relevant "clear and convincing" standard of proof is more demanding

18  than the standard of proof required for a claim of bad faith.  *See Amadeo*, 290 F.3d at 1164; *Yang*,

19  2007 WL 1555749, at *15; *Mock*, 4 Cal. App. 4th at 328 (stating that "[e]vidence that an insurer

20  has violated its duty of good faith and fair dealing does not thereby establish that it has acted with

21  the requisite malice, oppression, or fraud to justify an award of punitive damages").  Plaintiffs'

22  failure to present evidence of bad faith capable of surviving defendant's motion for summary

23  judgment thus precludes them from maintaining a claim for punitive damages.  *See Sell v.*

24  *Nationwide Mut. Ins. Co.*, 492 Fed. Appx. 740, 743 (9th Cir. 2012)[11] (granting summary

25  judgment for defendant on the issue of punitive damages after concluding that "[b]ecause

26  [defendant] did not act in bad faith, punitive damages are unavailable") (citation omitted); *see*

27

28

---

[11]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  | *also American Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113, 1123 (9th Cir.

2  | 1999) (stating that "[i]f the insurer did not act in bad faith, punitive damages are unavailable").

3  | Accordingly, defendant is entitled to summary judgment on plaintiffs' punitive damages claim.

CONCLUSION

For all of the reasons set forth above:

1. Defendant's motion for summary judgment (Doc. Nos. 169, 170) in its favor as to all of plaintiffs' claims is granted;

2. Plaintiffs' motion for partial summary judgment (Doc. No. 171) as to plaintiffs' bad faith claims premised on defendant's rejection of the 2001 settlement offer is denied; and

3. The Clerk of the Court is directed to enter judgement in favor of defendant and close this case.

IT IS SO ORDERED.

Dated:   **December 9, 2016**

_____
UNITED STATES DISTRICT JUDGE